By the Court.—Speir, J.
The American Seal Lock Company was organized in May, 1870, and during that year very little business was transacted. The contract on which the action is based is dated October, 1871, and it is conceded that up to January 19, 1872, no report was made or filed. From the organization of the company, until the action was brought in February, 1873, the defendants were the sole trustees of the corporation.
It appears from the evidence that the locks were not delivered at the several times specified in the contract, *562 but a few were delivered in December, 1871; how many does not appear. The most definite testimony produced ón the subject of deliveries was by Mr. Whitney, the president of the plaintiff’s company, who says: “They were delivered in January, 1872; the majority of the ten thousand was delivered in the month of January, 1872 - pretty much all during the month of January. 1872.”
The plaintiff proved as evidence of indebtedness of the American Seal Lock Company, two promissory notes, one for three thousand four hundred and forty-three dollars and nineteen cents, dated June (I, 1872, three months after date; the other for two thousand four hundred and seventy-nine dollars and thirteen cents, dated May 30, 1872, two months after date.
These were renewals of previous notes dated respectively, January 24, and January 31,1872, given by the Américan Seal Lock Company, in the year 1872, in payment for locks that had been delivered at their respective dates. On the trial the plaintiff offered to return the renewed notes.
It is comparatively of little importance, in the view Í take of the case, to ascertain whether any portion of the locks were delivered in December, 1871, or indeed, whether any of the certificates were verified and filed within the time required by the twelfth section of the statute. It is very plain that the certificates which were filed, do not comply with the requirements of the section.' They do not state the amount of capital, nor the proportion actually paid in. They do state the amount of the existing debts, and that is all.
It has been repeatedly held that the general object of the law was, besides enforcing the duty of making reports for the benefit of all concerned, to enable persons proposing to deal with the corporation to see whether they could safely do so. These certificates *563 would afford no useful information to anybody inquiring as to amount of capital, or thq proportion' actually paid in.
The learned counsel for the appellant, I think, must have taken this view of the case, as he has placed his objections substantially on other grounds. First, that the contract between the two companies, which is the foundation of the action, was ultra vires as to the plaintiff; and second, that at the time of the alleged default, the plaintiff must have been a creditor of the company in esse, and not in posse. In other words, there must have been a debt subsisting, and in favor of this plaintiff prior to January, 1872.
The first objection fairly stated is that the plaintiff agrees to “ manufacture and deliver to the American Seal Lock Company twenty thousand circular railroad locks,”—that the subject-matter under the contract bears no relation whatever to any of the articles which the company is authorized under its charter to make and sell. It is quite apparent, I think, that a body politic and corporate created and organized for the purpose of manufacturing every variety of fire arms and other implements of war applicable to the use of fire-arms, and all kinds of machinery adapted to the construction thereof, and otherwise, can not be construed into a corporate authority to manufacture and deliver circular railroad locks, any more than they could to make and deliver railroads, or railroad cars.
But are the defendants at liberty to discuss with the sovereign power of the State of Connecticut the extent of the plaintiff’s chartered privileges, until they have restored the property, or its value, which they unjustly hold without proper compensation. I)uer, J., says: “A defendant who has contracted with a corporation defacto is never permitted to allege any defect in its organization as affecting its capacity to contract or sue, but all such objections, if valid, are only available on *564 behalf of the sovereign power of the State” (Palmer v. Lawrence, 3 Sand. S. C. R. 170; The Chester Glass Co. v. Dewey, 16 Mass. 102). The defendants should not be permitted in law or equity to rescind a contract the fruits of which they retain, and can never be compelled to restore if this doctrine is carried out. It was decided in Moss v. The Rossie Lead Mining Co. (5 Hill 137) that a corporation can never' avoid its obligation on the ground that it was given for property which the corporation was not authorized to purchase. If the company was bound, I see no reason why the trustees should not also be bound by the contract. But defendant’s counsel say there must be privity of contract or estate to apply the rule of estoppel from setting up this defense,—and the argument is, that the liability resting upon the terms of a penal statute, an estoppel can not arise against the defendants. A little consideration only, is required to see that this penal statute, for such it doubtless is, can have no operation whatever, except as applied to a contract express or implied between parties to it, which is the first condition of privity of contract.. It is, I think, this feature in the transaction which gives to the statute its chief value.
Tne second objection is that the trustees are only liable for debts of the company then, existing. It is claimed that inasmuch as the plaintiff took the notes of the company which did not mature until after the reports were filed, the debt was not subsisting against the defendant’s company in favor of the plaintiff prior to the time of tiling the report; that it was not a sain certain owing presenting but payable in the future. In the case at bar we have already seen that the reports do not meet the requirements of the statute. Even if the proposition of the counsel be sound, it cannot avail, for the notes fell due on or prior to September 10, 1872, and remained unpaid at the time'of the trial when they were tendered to defendants, so that there was on Sep *565 tember 10, 1872, a subsisting debt then due, and which continued to be due at the time of the commencement of this action, which was on or after January 31, 1873, and still continues to be due.
Therefore there was a subsisting debt due at the time of the default in filing the report, which should have been filed within twenty days after January 1, 3873.
The case must be disposed of as though there had never been any reports filed. I fully agree that the statute is penal, and is to be strictly construed, and that the rules of law do not permit us to extend it by construction to cases not fairly within the language. As, however, the debt was actually due when the notes were tendered to the plaintiff when the defendant’s liability attached under the statute, it is not necessary to extend the discussion of the question raised.
The judgment is affirmed, with costs
Monell, Ch. J. and Sedgwick, J. concurred.